# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| YASANTE FOY, Individually and as Special Administrator and Special Representative of the estate of Mark Haynie Jr, deceased, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, et al., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) )  **No. 15 C 3720**  <br><br> **Chief Judge Rubén Castillo** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Yasante Foy, mother of Mark Haynie Jr. and representative of his estate, brings her sixth amended complaint against Defendants City of Chicago (the "City") and police officers Ruben Del Valle, Jeffery Friedlieb, Darryl Johnson, Tim Philbin, and Donald Banks (collectively, "Defendants"). (R. 58, Sixth Am. Compl.) Plaintiff's sixth amended complaint arises from the death of 17-year-old Mark Haynie Jr. ("Haynie") while in police custody and alleges violations of 42 U.S.C. § 1983 ("Section 1983"), the Illinois Wrongful Death Act, 740 ILL. COMP. STAT. 180/1, and the Illinois Survival Act, 755 ILL. COMP. STAT. 5/27-6, as well as claims for intentional infliction of emotional distress. (*Id.*) Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to dismiss counts seven and eight, Plaintiff's Section 1983 and *Monell* claims. (R. 60, Mot. at 1-2.) For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

On July 13, 2011, Officers Del Valle and Friedlieb arrested Haynie and transported him to a police station located at 3151 W. Harrison St., Chicago, IL (the "Harrison Police Station").

(R. 58, Sixth Am. Compl. at 3-4.) Officers Johnson, Philbin, and Banks "were the lock up keepers on duty during . . . [Haynie's] lock up." (*Id.* at 4.) Despite being a minor, Haynie was held with the adult population at the Harrison Police Station. (*Id.* at 5.) After being detained, Haynie's "physical condition became medically dangerous," he complained that he was not feeling well, and he requested medical attention. (*Id.* at 4, 6.) Plaintiff claims that Haynie's calls went unheeded. In fact, Plaintiff alleges that after Haynie requested medical assistance, an unidentified police officer told him to "shut the fuck up and lie down." (*Id.* at 17.) Plaintiff also alleges that fellow detainees at the Harrison Police Station informed the on duty police officers that Haynie was having trouble breathing and that his condition was worsening. (*Id.* at 6.) Later that day, Haynie was found unconscious in his cell. (*Id.* at 6.) Haynie died the same day.[1] (*Id.*)

On July 21, 2011, Plaintiff filed suit in the Circuit Court of Cook County against the City and unknown police officers. (R. 1-2, Ex. B to Notice of Removal, Compl.) The original complaint asserted wrongful death and survival claims. (*Id.* at 1-8.) Plaintiff amended the complaint to add federal causes of action and, pursuant to 28 U.S.C. § 1441(c), Defendants removed the lawsuit to the U.S. District Court for the Northern District of Illinois. (R. 1, Notice of Removal at 1-2.) Subsequently, Plaintiff withdrew her federal claims and the Court remanded the lawsuit. (*Id.* at 2.) On April 1, 2015, Plaintiff filed the fourth amended complaint, adding Section 1983 claims against the City and the named police officers. (*Id.*; *see also* R. 1-1, Ex. A to Notice of Removal, Fourth Am. Compl.) Nearly one month later, Defendants removed the lawsuit once again to this Court. (R. 1, Notice of Removal.) On July 17, 2015, the City filed its motion to dismiss Plaintiff's Section 1983 claim against the City. (R. 24, Mot. to Dismiss Fourth

---

[1] While the sixth amended complaint is short on details surrounding Haynie's untimely passing and, specifically, the cause of his death, the City contends that Haynie died of a drug overdose. (*See* R. 60, Mot. at 4 ("Several of the deaths referenced are not like Decedent's drug overdose."); R. 65-1, City's Answer to Pl.'s Suppl. Interrogs. at 3 ("Mark Haynie died at Mt. Sinai Hospital of an overdose after having been held at the 11th District lockup on July 13, 2011.").)

Am. Compl.) In response to the motion to dismiss, Plaintiff moved for leave to file a fifth amended complaint *instanter*. (R. 35, Mot. for Leave; R. 35-1, Fifth Am. Compl.) Following the filing of the fifth amended complaint and another motion to dismiss, (R. 44, Mot. to Dismiss Fifth Am. Compl.), the Court ordered the City to disclose to Plaintiff all of the "deaths at the same police lock-up in the last five years," (R. 50, Order). After the City provided the ordered discovery, Plaintiff filed her sixth amended complaint on December 1, 2015. (R. 58, Sixth Am. Compl.)

In addition to state-law claims, Plaintiff brings two causes of action for deliberate indifference under Section 1983. (*Id.* at 15-21.) Specifically, count seven alleges that—while Haynie was in police custody—the defendant officers were on notice of Haynie's worsening condition yet refused to provide him with timely medical attention. (*Id.* at 15-16.) As a result of the defendant officers' alleged actions and omissions, Haynie died. (*Id.* at 8.)

Count eight seeks to hold the City liable for the defendant officers' actions under a theory of municipal liability pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Specifically, Plaintiff alleges that the City maintains "practices, policies, procedures and an overall culture" that result in a failure "to meet its constitutional obligation to maintain and provide continuing adequate and appropriate monitoring, supervision, medical care and medical treatment of detainees." (*Id.* at 18.) Plaintiff also alleges that the City has "policies and procedures under which detainees with serious medical conditions, like [Haynie], were routinely and frequently denied proper or adequate medical care." (*Id.* at 17-18.) Plaintiff further alleges that the City inadequately trains and supervises its employees, which causes delays of medical treatment to inmates in need of urgent care. (*Id.* at 18.) In addition, Plaintiff alleges that the City "encourage[s] future abuses toward the inmates by failing to

discipline or punish employee misconduct that resulted in inadequate medical treatments for inmates." (*Id.*) Plaintiff also claims that the City has widespread practice of failing "to have its cameras located in and around [the Harrison Police Station] . . . in proper working order, so it could monitor . . . [Haynie] and other detainees." (*Id.*; *see also id.* at 20.) As a result of these alleged policies and practices, at least four other individuals have died at the Harrison Police Station between June 2007 and February 2011. (*Id.* at 18-19.) Finally, Plaintiff alleges that the City continues to maintain these policies and procedures as evidenced by the fact that, since Haynie's death, four more individuals have died at the Harrison Police Station. (*Id.* at 20.)

On December 16, 2015, Defendants answered Plaintiff's state-law claims, (R. 59, Answer), and filed a motion to dismiss the Section 1983 claims, (R. 60, Mot.). Defendants contend that the Section 1983 claims fail under Rule 12(b)(6) and request that the Court dismiss counts seven and eight. (*Id.*) On January 22, 2016, Plaintiff filed her response, (R. 65, Resp.), and Defendants filed their reply on January 29, 2016, (R. 66, Reply).

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of a claim. FED. R. CIV. P. 12(b)(6). Under federal pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A claim for relief must also be plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555. "In determining a complaint's sufficiency, [a court will] . . . construe it in light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmovant's] favor." *Zahn v. N. Am. Power & Gas,*

*LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (citation and internal quotation marks omitted).

However, a court need not "accept as true any legal assertions or recitals of the elements of a

cause of action supported by mere conclusory statements." *Id.* (citation and internal quotation

marks omitted).

## ANALYSIS

### I.     Count Seven Against the Officers

Count seven in Plaintiff's sixth amended complaint alleges that the defendant officers

demonstrated deliberate indifference to Haynie's serious medical needs and failed to meet their

constitutional obligations to provide adequate medical care. (R. 58, Sixth Am. Compl. at 15-16.)

The parties disagree as to the nature of count seven, specifically whether it is brought against the

defendant officers in their individual or official capacities and whether a cause of action even

exists for "deliberate indifference." (R. 60, Mot. at 2-3; R. 65, Resp. at 5; R. 66, Reply at 2.) The

Court will attempt to sort out the parties' confusing contentions.

####     A.     Deliberate Indifference Against the Officers in Their Official Capacities

Plaintiff alleges that Officers Del Valle, Friedlieb, Johnson, Philbin, and Banks are

"being sued individually and in their official capacity." (R. 58, Sixth Am. Compl. at 2.) Plaintiff

titles count seven as "42 U.S.C. § 1983 Monell Claim for Deliberate Indifference Chicago

(Chicago Police Officers)." (*Id.* at 15.) In a very brief argument, the City asserts that count seven

must be dismissed because "[i]t is beyond reasonable dispute that the holding of *Monell* pertains

to governmental agencies" and "there is no basis for liability for individual officers under

*Monell*." (R. 60, Mot. at 3.) In response, Plaintiff states that count seven is a claim for

"[d]eliberate [i]ndifference . . . against the individual officers." (R. 65, Resp. at 5.)

Under Section 1983, there are two ways in which a party may sue an individual government actor: in the actor's official capacity or in his individual, or personal, capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006); *Graham*, 473 U.S. at 165-66 ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citation and internal quotation marks omitted)). A *Monell* claim seeks to impose civil liability on municipalities. *See Monell,* 436 U.S. at 690-94. As the United States Supreme Court has held, an official-capacity suit is "*not* a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166. Simply put, a party cannot pursue a *Monell* claim against an officer in his individual capacity. Thus, to the extent that Plaintiff is attempting to assert a *Monell* claim against the defendant officers in their individual capacities, this cause of action is not cognizable.

In addition, Plaintiff's response states that count seven was improperly titled, that the claim is intended to be a deliberate indifference claim against the individual officers, and that she only seeks to pursue a *Monell* claim against the City. (R. 65, Resp. at 5.) Thus, to the extent that count seven could ever be construed as a *Monell* claim against the officers in their official capacities, Plaintiff has disavowed the claim.[2]

---

[2] Plaintiff requests leave to amend the complaint "to more appropriately reflect" Plaintiff's position and "correct the section heading." (R. 65, Resp. at 5.) However, it is not necessary for Plaintiff to file a seventh amended complaint because the Court construes the current claim as a claim for deliberate indifference pursuant to Section 1983 against the defendant officers in their individual capacities.

### B. Deliberate Indifference Claim Against Officers in Their Individual Capacities

Defendants argue that even if count seven is improperly titled, "[i]t is unclear if a cause of action called 'deliberate indifference' can be made against individuals." (R. 66, Reply at 2.) The Court is uncertain if Defendants' contention is that this cause of action does not exist at all or if they are arguing that Plaintiff has failed to state a claim for deliberate indifference against the officers in their individual capacities. As discussed below, any argument that a claim for deliberate indifference does not exist ignores decades of established case law. In addition, affording Plaintiff all favorable inferences, the Court determines that Plaintiff states a claim for deliberate indifference of a serious medical need against the three officers on duty at the Harrison Police Station on the day of Haynie's death. However, to the extent that Plaintiff is asserting a claim for failure to provide adequate medical care against the two arresting officers in their individual capacities, Plaintiff's claim fails.

### 1. Officers Johnson, Philbin, and Banks

Section 1983 provides that a person may not be deprived of any constitutional right by an individual acting under color of state law. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). "The act authorizes claimants to sue persons in their individual capacities who are alleged to have violated such rights." *Id.* at 472-73. To state a claim for personal liability under Section 1983, a plaintiff must allege that the defendant was personally involved in the deprivation of his constitutional rights. *Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." (citation and internal quotation marks omitted)). In other words, "[t]e individual defendant must have caused or participated in a constitutional deprivation." *Pepper v.*

*Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation and internal quotation marks omitted).

The Fourteenth Amendment prohibits deliberate indifference to the serious medical needs of pretrial detainees. *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (jailers have a duty to provide adequate medical care to prisoners); *Riley v. Kolitwenzew*, 526 F. App'x 653, 656 (7th Cir. 2013) (concluding pretrial detainee adequately alleged claim for deliberate indifference to a serious medical need).[3] Deliberate indifference under either the Eighth or Fourteenth Amendments has both an objective and a subjective element: an inmate must allege facts showing that he suffered from an objectively serious medical condition and that jail personnel acted with deliberate indifference to that condition. *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014); *Estate of Gee ex rel. Beeman v. Johnson*, 365 F. App'x 679, 683 (7th Cir. 2010); *see also Soto v. Jefferson*, No. 13 C 4561, 2015 WL 4478163, at *2 (N.D. Ill. July 22, 2015) ("Claims of deliberate indifference to a

---

[3] The sixth amended complaint does not indicate whether the defendant officers' conduct at the Harrison Police Station occurred before Haynie was given a probable cause hearing pursuant to *Gerstein v. Pugh*, 420 U.S. 103 (1975). If Haynie's arrest was warrantless and the alleged events took place before Haynie was given a probable cause hearing, then Plaintiff's allegations of failure to provide medical care must be analyzed under the Fourth Amendment. "[T]he protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, [the Fourteenth Amendment's] due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction." *Lopez v. City of Chi.*, 464 F.3d 711, 719 (7th Cir. 2006). A claim for failure to provide medical care to an arrestee that is brought under the Fourth Amendment is governed by an "objectively unreasonable standard." *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). The standard for establishing a Fourth Amendment medical-care claim is lower than that needed to establish deliberate indifference under either the Eighth or Fourteenth Amendments. *Id.* Because the sixth amended complaint gives no indication as to whether Haynie was arrested pursuant to a warrant or had received a *Gerstein* hearing, it is unclear whether the Fourth Amendment or Fourteenth Amendment governs count seven. However, because Plaintiff's claim against Officers Johnson, Philbin, and Banks is sufficient under the Fourteenth Amendment's more stringent deliberate indifference standard, Plaintiff's claim also passes muster under the Fourth Amendment's objectively unreasonable standard. *See id.* ("[T]he deliberate indifference standard under the Eighth and Fourteenth Amendments requires a higher showing on a plaintiff's part than is necessary to prove an officer's conduct was objectively unreasonable under the circumstances." (citation and internal quotation marks omitted)).

serious medical need of a pretrial detainee under the Fourteenth Amendment use the same standard for deliberate indifference to a serious medical need applied to Eighth Amendment claims for convicted prisoners."). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). With respect to the subjective component of the deliberate indifference test, a plaintiff must allege that the defendant was aware of and consciously disregarded his medical need. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04. "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). If a plaintiff successfully pleads that a "defendant had knowledge of and consciously disregarded a serious risk," the plaintiff also "succeeds in alleging the personal involvement of the individual defendant by virtue of the fact that those elements are subjective in nature." *Crockwell v. Dart*, No. 13 C 4880, 2013 WL 6796788, at *3 (N.D. Ill. Dec. 23, 2013) (emphasis omitted).

Thus, contrary to Defendants' unsupported contention, a plaintiff may state a cause of action pursuant to Section 1983 for deliberate indifference to a serious medical need against custodial officers in their individual capacities. *See, e.g.*, *Riley*, 526 F. App'x at 656-57 (pretrial detainee adequately alleged that defendant had notice of the detainee's medical need, delayed necessary medical treatment and, as a result, needlessly prolonged his pain); *Thomas ex rel. Smith v. Cook Cty. Sheriff*, 401 F. Supp. 2d 867, 873 (N.D. Ill. 2005) ("[Plaintiff] has sufficiently . . . alleg[ed] that each individual defendant was aware of [the decedent's] serious medical needs and displayed deliberate indifference to them by failing to take adequate steps to protect him."); *Crockwell*, 2013 WL 6796788, at *3 ("A jail official may be named as a defendant in his or her

individual capacity in a § 1983 claim when the official personally participated in *or* had knowledge of the types of acts or omissions that form the basis of the claim.").

While Defendants do not address whether Plaintiff has alleged all elements of a deliberate indifference claim, the Court will nonetheless consider whether Plaintiff has stated a cause of action for deliberate indifference against Officers Johnson, Philbin, and Banks. First, there can be no question that Haynie suffered from an objectively serious medical condition— Haynie died within twenty-four hours of being taken into police custody. (R. 58, Sixth Am. Compl. at 6.)

Next, the Court moves to the subjective culpability inquiry. Plaintiff must allege that the defendant officers acted with deliberate indifference to Haynie's condition, *i.e.* that the officers failed to take reasonable measures to address the medical condition despite subjectively knowing that the inmate faced a substantial risk of serious harm. *Farmer*, 511 U.S. at 834; *Townsend*, 759 F.3d at 689. Plaintiff alleges sufficient facts to plausibly suggest that the three defendant officers who were on duty at the Harrison Police Station were aware of Haynie's medical condition and that these officers were deliberately indifferent to Haynie's medical condition. Specifically, Plaintiff alleges that Officers Johnson, Philbin, and Banks were "the lock up keepers" at the time Haynie was in custody at the Harrison Police Station. (R. 58, Sixth Am. Compl. at 4.) Plaintiff alleges that these three officers "[f]ailed to adequately screen or assess . . . [Haynie's] health situation." (*Id.* at 16.) In addition, Plaintiff alleges that Haynie told these officers that he was in medical distress and needed assistance but these officers "refused to ensure that [Haynie] received timely medical attention." (*Id.* at 6, 15-16.) Plaintiff also alleges that other detainees at the Harrison Police Station told officers that Haynie was having trouble breathing, that his condition was worsening, and that he needed medical assistance. (*Id.* at 5-6, 16.) Plaintiff further

alleges that not only were Haynie's calls for help ignored, but in response to a plea for assistance, he was told by an officer to "shut the fuck up and lie down."[4] (*Id.* at 17.) Thus, Plaintiff alleges more than enough specific facts to establish that the officers' conduct constituted an "unreasonable and deliberate indifference to [Haynie's] serious medical needs." (*Id.* at 16.)

When construed in the light most favorable to Plaintiff, it is plausible that these three officers knew of Haynie's serious medical condition, disregarded the risk, and failed to assist Haynie. These allegations sufficiently put these three defendant officers on notice of Plaintiff's Section 1983 claim. Therefore, the Court denies Defendants' request to dismiss count seven of Plaintiff's sixth amended complaint as to Officers Johnson, Philbin, and Banks in their individual capacities.[5]

### 2. Officers Del Valle and Friedlieb

Plaintiff also alleges that arresting Officers Del Valle and Friedlieb failed to obtain necessary medical care for Haynie following his arrest. (*Id.* at 15.) However, this claim fails.

A claim for failure to provide medical care to an arrestee under the Fourth Amendment is governed by an objectively unreasonable standard. *Ortiz v. City of Chi.*, 656 F.3d 523, 530 (7th Cir. 2011); *Williams*, 509 F.3d at 403. "To state a claim based on an arrestee's medical needs, the plaintiff must allege facts sufficient to infer that the defendant acted unreasonably in light of

---

[4] Plaintiff alleges that this remark was made by "an unidentified officer on duty" at the Harrison Police Station and does not specifically link Officers Johnson, Philbin, or Banks to this statement, (*id.* at 17); however, at the motion to dismiss stage, Plaintiff does not need to allege that level of detail. *Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009); *see, e.g., Warren ex rel. Warren v. Dart*, No. 09-cv-3512, 2010 WL 4883923, at *7 (N.D. Ill. Nov. 24, 2010) ("Although it is true that Plaintiffs' complaint does not explicitly parse which of the named Defendants were responsible for which of the above acts or omissions, that level of specificity is not required under federal notice pleading standards.").

[5] Defendants also argue that count seven should be dismissed because it is "cumulative of the other claims in the complaint." (R. 66, Reply at 2.) Plaintiff asserts one other Section 1983 claim and that is against the City and not the individual officers. (R. 58, Sixth Am. Compl. at 17-22.) In addition, Plaintiff's other claims are based on Illinois common and statutory law. (*Id.* at 7-14.) Contrary to Defendants' contention, count seven against the individual officers is not duplicative of other claims in the complaint.

the notice given to the defendant of the plaintiff's medical needs, the seriousness of those needs, the scope of the requested treatment, and the police interests at stake." *Klein v. Curran*, No. 13 CV 5191, 2014 WL 5023486, at *3 (N.D. Ill. Oct. 7, 2014); *see also Ortiz*, 656 F.3d at 530.

Aside from alleging that Officers Del Valle and Friedlieb arrested Haynie and transported him to the Harrison Police Station, (R. 58, Sixth Am. Compl. at 4), Plaintiff provides no factual content to support a claim that these two officers were involved in depriving Haynie of medical care. For example, as opposed to the pleas made by Haynie and other detainees to the officers while in detention at the Harrison Police Station, Plaintiff does not allege that Haynie requested medical assistance at the time of his arrest. In addition, as opposed to the allegations that Haynie was having trouble breathing and that his condition was deteriorating while in detention, there are no allegations that Haynie was actually suffering any medical distress at the time he was arrested and transported to the Harrison Police Station. Simply put, there are no allegations from which the Court can plausibly infer that at the time of Haynie's arrest, Officers Del Valle and Friedlieb were on notice of Haynie's medical distress or that he even had a need for medical assistance at the time of arrest.

In addition, Plaintiff oftentimes improperly lumps together all of the defendant officers with a complete disregard as to which officers were the arresting officers and which officers were on duty at the Harrison Police Station. Plaintiff explicitly states that Officers Del Valle and Friedlieb arrested and transported Haynie, and Officers Johnson, Philbin, and Banks were the "lock up keepers on duty during [Haynie's] lock up." (*Id.* at 4.) Despite this clear distinction in roles, Plaintiff repeatedly combines all of the five defendant officers together in the alleged wrongdoing. (*Id.* at 3-7.) Based on Plaintiff's own allegations, it is not plausible that Officers Del Valle and Friedlieb were at the Harrison Police Station at the time that Haynie and other pretrial

12

detainees were requesting medical assistance while Haynie was in detention and subsequently failed to provide medical assistance. *See, e.g., Klein*, 2014 WL 5023486, at *3 (dismissing claim against arresting officers for deprivation of medical care when the complaint alleged that the plaintiff told unknown officers that he was feeling ill, but did "not allege that [the arresting officers] . . . had anything to do with that aspect of [the plaintiff's] detention").

Ultimately, Plaintiff fails to allege any factual content that establish that Officers Del Valle and Friedlieb were objectively unreasonable in failing to provide medical care for Haynie. Likewise, there are no substantive allegations sufficient to show the necessary personal involvement to establish individual liability against these two officers under Section 1983. *See Grieveson*, 538 F.3d at 776. As such, to the extent that count seven may be construed as a claim for disregard of a medical need under Section 1983 against Officers Del Valle and Friedlieb in their individual capacities, that claim is dismissed with prejudice.

## II.    Count Eight Against the City

Count eight of the sixth amended complaint is a *Monell* claim against the City and alleges that the City "failed to meet its constitutional obligation to maintain and provide continuing adequate and appropriate medical care and treatment" to Haynie. (R. 58, Sixth Am. Compl. at 17.) The City moves to dismiss the Section 1983 claim arguing that Plaintiff has failed to properly allege a viable claim under *Monell*. (R. 60, Mot. at 3-8.)

Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. In order for liability to attach under *Monell*, a plaintiff must allege that a local government *itself* caused or

13

participated in the deprivation of his or her rights. *Id.* at 694. A plaintiff's *Monell* claim against a municipality is proper "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 727 (7th Cir. 2014) (quoting *Monell*, 436 U.S. at 694). A municipality may be liable for a Section 1983 violation in one of three ways:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a wide-spread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final decision policymaking authority.

*Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013) (citation and internal quotation marks omitted). While there is no heightened pleading standard for *Monell* claims, *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007), legal conclusions and conclusory allegations are not enough. *Iqbal*, 556 U.S. at 679.

Plaintiff does not allege the existence of an express policy that caused Haynie's constitutional deprivation nor does she allege that Haynie's death was directly caused by a person with final policymaking authority. Thus, the only way Plaintiff may assert a Section 1983 claim for deliberate indifference to a medical need against the City is by alleging a widespread practice "so permanent and well-settled that it constitutes a custom or practice." *Sims*, 506 F.3d at 515. The Seventh Circuit has declined to "adopt any bright-line rules defining a 'widespread custom or practice,'" but to allege a widespread practice a plaintiff must state that the city policymakers were "deliberately indifferent as to [the] known or obvious consequences" of the alleged practice. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (alteration in original). In order for a plaintiff to prevail on a deliberate indifference claim in this

context, the municipality or city official "must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.* In addition, a plaintiff pursuing a widespread practice claim generally must allege more than one, and sometimes more than three, instances of misconduct. *Id.* This requirement is intended to "demonstrate that there is a policy at issue rather than a random event." *Id.* Finally, a plaintiff must also allege causation—specifically, that the policy or custom was the "moving force" behind the constitutional violation. *Sims*, 506 F.3d at 514; *see also Johnson*, 526 F. App'x at 695.

While far from a model of clarity, the sixth amended complaint appears to challenge four policies or practices that result in the deliberate indifference to pretrial detainees' medical needs. First, Plaintiff alleges that the City has a widespread practice of providing inadequate medical care. (R. 58, Sixth Am. Compl. at 17-18.) Second, Plaintiff alleges that the City fails to train officers to adequately respond to "inmates in need of urgent medical treatment" and that this failure to train "cause[s] routine delays of medical treatment to inmates." (*Id.* at 18.) Third, Plaintiff alleges that the City encourages future abuses by not disciplining employees who have engaged in misconduct that resulted in inadequate medical treatment for inmates. (*Id.* at 18.) Finally, Plaintiff alleges that "despite being aware of . . . the seriousness of medical issue[s] faced by some detainees at its police facilities," the City has a practice of not maintaining cameras and surveillance equipment located at the Harrison Police Station. (*Id.* at 20.)

In support of her claim that the City maintained a series of widespread practices that result in the deliberate indifference to pretrial detainees' medical needs, Plaintiff cites to the fact

that eight other inmates have died at the Harrison Police Station between 2007 and 2015.[6] (*Id.* at 18-20.) Plaintiff indicates that three of these deaths were the result of suicide, three deaths were attributed to drug overdoses, one death was due to cardiac dysrhythmia, and one death was due to pulmonary disease. (*Id.*) The sixth amended complaint does not include the cause of Haynie's death; however, the City indicates that Haynie died of a drug overdose. (R. 60, Mot. at 4; *see also* R. 65-1, City's Answer to Pl.'s Suppl. Interrogs. at 3.) Aside from the fact that these deaths are attributed to a wide array of causes, Plaintiff fails to allege any factual content that plausibly suggest that these deaths were the result of the City's widespread practices of officers failing to provide medical attention, failing to train officers, failing to punish officers when an inmate suffered a medical emergency, or failing to maintain operable surveillance equipment. Plaintiff alleges no factual matter to establish that the circumstances surrounding any of these inmates' deaths are similar. For example, Plaintiff alleges in conclusory terms that another detainee, Victor Flores, committed suicide by hanging following statements that he wanted to "jump off a roof and hurt himself." (R. 58, Sixth Am. Compl. at 19.) However, there is nothing in the complaint that plausibly suggests that the circumstances surrounding Haynie's death and Flores's death are comparable. In addition, for at least five of the deaths, Plaintiff merely states the name of the inmate, the date of the inmate's death, and the cause of death, with no other explanatory details. (*Id.* at 20.) The Court is left to guess as to how these deaths—which have occurred at a jail that has housed likely thousands of detainees between 2007 and 2015—can be attributed to any of the widespread practices that Plaintiff attempts to allege. Moreover, these deficiencies are

---

[6] With no citation to authority, Defendants argue that the Court cannot consider any deaths that occurred after Haynie's death because they "are not probative as to what policies may have been in place prior to Decedent's death." (R. 60, Mot. at 4.) However, Plaintiff cites to these additional deaths to support her allegation that the City's practices "have remained consistent" through the recent years. (R. 58, Sixth Am. Compl. at 20.) In light of Plaintiff's allegations of an ongoing practice and Defendants failure to point to case law to the contrary, the Court will consider the deaths that occurred after Haynie's when determining whether Plaintiff has sufficiently alleged a widespread practice in support of her *Monell* claim.

even more glaring considering the fact that Plaintiff has already conducted discovery regarding inmate deaths at the Harrison Police Station.

While these tragic deaths are unfortunate, there are no allegations that these deaths and Haynie's death share substantive similarities. Simply put, the conclusory reliance on other deaths between 2007 and 2015 at the Harrison Police Station does not establish the possibility that the City's alleged widespread practices are so well-settled that they amount to an unconstitutional custom or policy. *See, e.g.*, *Estate of Moreland v. Dieter,* 395 F.3d 747, 760 (7th Cir. 2005) (concluding that there was nothing to indicate a violation of a jail policy and that three alleged incidents did not amount to a widespread practice that was so well-settled so as to constitute an unconstitutional custom); *Henderson v. City of Chi.*, No. 14 C 1164, 2015 WL 1954464, at *2 (N.D. Ill. Apr. 29, 2015) (conclusory allegations about three allegedly unconstitutional incidents found insufficient to state a *Monell* claim); *Winchester v. Marketti*, No. 11 CV 9224, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012) ("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity.").

Plaintiff's failure-to-train allegations also do not pass muster because they are boilerplate and lack any supporting facts. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This is a difficult claim to make: "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of the persons with whom the [untrained employees] come into

contact." *Id.* (citation and internal quotation marks omitted). The sixth amended complaint has

no allegations to this effect. At no point does Plaintiff attempt to articulate what specific training

was lacking. *See Hardy v. Wexford Health Sources, Inc.*, No. 12-CV-6554, 2015 WL 1593597, at

*14 (N.D. Ill. Apr. 2, 2015) ("Absent allegations of what training or staffing was lacking and

how that deficiency impacted Hardy's health or that of his fellow inmates, Hardy has failed to

state a claim for deliberate indifference due to a failure to train and a failure to provide adequate

staffing."). The sixth amended complaint also fails to allege factual content that would support

an inference that the improper conduct and constitutional deprivation was caused, at least in part,

by lack of training. *See Maglaya v. Kumiga*, No. 14-CV-3619, 2015 WL 4624884, at *5 (N.D.

Ill. Aug. 3, 2015) ("In addition to failing to provide any factual support to sustain this allegation,

Plaintiffs also fail to plead how this alleged failure to train officers was the moving force behind

Plaintiffs' constitutional harm."). The Court cannot reasonably infer that a failure to train the

officers caused Haynie's constitutional injuries based upon the factual allegations in the sixth

amended complaint. *See, e.g., Suber v. City of Chi.*, No. 10 C 2876, 2011 WL 1706156, at *4

(N.D. Ill. May 5, 2011) (dismissing *Monell* claim when the "complaint [was] devoid of any

plausible allegations about how Defendants failed to train their police officers despite

foreseeable consequences and/or repeated complaints of constitutional violations").

Plaintiff's allegations of a failure to discipline are also boilerplate and lacking in detail.

The sixth amended complaint contains no allegations that could plausibly demonstrate that the

City has a widespread practice of failing to discipline officers when a pretrial detainee suffers a

medical emergency and it is determined that the officers did not adequately respond. Plaintiff

never articulates what the City's actual practice is for disciplining officers that engage in the

misconduct that allegedly occurred at the Harrison Police Station. In addition, Plaintiff does not

allege a single instance in which the City condoned similar behavior by officers at the Harrison Police Station by either promoting an officer or not disciplining the officer despite punishment being warranted. *See, e.g.*, *Starks v. City of Waukegan*, No. 09 C 348, 2013 WL 5874563, at *2 (N.D. Ill. Oct. 31, 2013) (allowing failure to train claim to proceed where plaintiff alleged pattern of nine similar constitutional violations that small municipality exacerbated by promoting instead of disciplining officers who were responsible for violations). Plaintiff succeeds in repeating all of the trigger words required of a *Monell* claim but absolutely no factual content to demonstrate a widespread practice of failing to adequately punish prior instances of similar misconduct. *See, e.g.*, *Harris v. Kruger*, No. 13-CV-8584, 2015 WL 300497, at *5 (N.D. Ill. Jan. 22, 2015) (dismissing *Monell* claim when plaintiff alleged that "as a matter of . . . practice, the CPD facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instance[s] of similar misconduct, thereby leading CPD officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses" but "nowhere allege[d] what is the policy or practice, only that the policy results in misconduct").

Finally, Plaintiff's allegation that the City maintained a widespread practice of failing to have functioning cameras located in and around the Harrison Police Station also fails. Critically, Plaintiff does not allege that the widespread practice of not repairing surveillance equipment was the proximate cause of Haynie's constitutional deprivation. While Plaintiff conclusively states that the City knew that the cameras at the Harrison Police Station "were inoperable" and that the failure to have working cameras resulted in inadequate monitoring of detainees and employees alike, (R. 58, Sixth Am. Compl. at 19), this is not the same as an allegation that the widespread practice of having inoperable cameras was what caused the deliberate indifference to Haynie's medical needs. Notably, Plaintiff explicitly alleges that the officers were told numerous times by

multiple detainees that Haynie needed assistance but that these officers ignored the pleas. (*Id.* at 5, 6, 17.) There are no allegations that Haynie's condition was ignored and not attended to because of inoperable surveillance cameras. Ultimately, even if Plaintiff alleged sufficient facts to demonstrate a widespread practice of failing to maintain surveillance cameras, Plaintiff has stated no facts or allegations to support an inference that such a practice could have been the "moving force" behind Haynie's death. *Sims*, 506 F.3d at 514; *Johnson v. Cook Cty.*, No. 11 CV 3203, 2011 WL 6009614, at *2 (N.D. Ill. Nov. 29, 2011) ("Plaintiff has failed, however, to allege the causation element of his *Monell* claim. . . . Nothing in the complaint permits the court to draw a reasonable inference that defendant caused plaintiff to be . . . assaulted.").

In light of the above, the Court grants Defendants' motion to dismiss count eight of the sixth amended complaint. Because Plaintiff has already taken discovery on this claim and after six iterations of her claims has yet to sufficiently state a *Monell* claim, Plaintiff's *Monell* claim against the City is dismissed with prejudice.

## III.    State-Law Claims

The sixth amended complaint also alleges an array of state-law claims against the City. (R. 58, Sixth Am. Compl. at 10-12, 13, 14.) The City states that "[t]o the extent that Plaintiff intends these claims to be read as some form of either *respondeat superior* or indemnification, the City concedes these counts are sufficiently pled for the purpose of this motion." (R. 60, Mot. at 2; *see also id.* at 8.) However, the City argues that if Plaintiff is "implying that the City by its own actions might be liable, . . . Plaintiff fails to state any basis for such claims anywhere in the Complaint." (*Id.* at 8.) Plaintiff does not respond to the City's contention and thus waives her claims to the extent that they seek to hold the City liable for its own actions. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) ("[B]y failing to respond

in any way to any of the arguments advanced by Defendants . . . , Plaintiffs have waived their claims."); *Green v. Charter One Bank, N.A.,* 640 F. Supp.2d 998 (N.D. Ill. 2009) (dismissing count from complaint where the plaintiff did not address the defendant's argument in its opposition, reasoning that "failure to respond permits an inference of acquiescence and 'acquiescence operates as a waiver.' " (quoting *Wojtas v. Capital Guardian Tr., Co.,* 477 F.3d 924, 929 (7th Cir. 2007)). Therefore, as this lawsuit continues, the Court will construe the state-law claims against the City as claims for indemnification and *respondeat superior* only.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss (R. 60, Mot.). As to count seven, any *Monell* claim against the individual officers is DISMISSED with prejudice. In addition, count seven against arresting officers Del Valle and Friedlieb is DISMISSED with prejudice. As to count eight, the *Monell* claim against the City is DISMISSED with prejudice. The motion is denied in all other respects.

The parties shall appear for a status hearing on June 22, 2016, at 9:45 a.m. and shall be prepared to set firm deadlines in this long-pending lawsuit. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: May 12, 2016**

21